IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
AT ELKINS

JOHNNY ALAN SCOTT, JR.

    Plaintiff,

vs.　　　　　　　　　　　　　　　　　　　　　　Civil Action No. 2:23-cv-1 TSK

ANGEL McCAULEY, individually,

    Defendant.

ELECTRONICALLY FILED
1/10/2023
U.S. DISTRICT COURT
Northern District of WV

## COMPLAINT

This complaint, brought pursuant to 42 U.S.C. Section 1983, the Fourth Amendment to the United States Constitution, arises out of the defendant's commission of an unreasonable search and seizure and false arrest against the Plaintiff at the Buckhannon Walmart, on or about January 10, 2021 in Upshur County, West Virginia, within the Northern District of West Virginia.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343.

## PARTIES

1. The Plaintiff, Johnny Alan Scott, Jr. was at all times relevant hereto a resident of Buckhannon, Upshur County West Virginia.

2. Defendant, Ptlm. Angel McCauley, was at all times relevant hereto a Patrolman employed by the Buckhannon Police Department, and was at all times relevant hereto acting under color of law, having an address of 24 S. Florida St., Buckhannon, West Virginia 26201.

**FACTS**

3. On January 10, 2021, Plaintiff, Johnny Alan Scott, Jr., was shopping at the Buckhannon Walmart, located in Buckhannon, Upshur County, West Virginia.

4. On January 10, 2021, Defendant, Ptlm. Angel McCauley, responded to a call from the aforementioned Walmart alleging that an irate customer was cussing and videoing employees.

5. Upon arrival, according to Defendant, the Walmart manager on duty advised her that an unidentified male was cussing and videoing employees, and that Walmart wanted him "trespassed." The manager further advised Defendant that the person in question was currently in line at register eight.

6. Defendant McCauley proceeded to approach Plaintiff while he was standing in the checkout line, and asked him if he would speak to her. Plaintiff immediately agreed to speak with Defendant. Plaintiff began by advising Defendant that, when he entered the store, an employee demanded the he wear a mask while in the store. Plaintiff, noticing many unmasked shoppers and employees, advised the employee that he wasn't going to wear a mask, and proceeded into the store toward the home and garden section. At that time, Plaintiff heard his description, including what he was wearing, being broadcast over the store's intercom system. Plaintiff continued shopping, and was in the checkout line at register eight when Defendant McCauley approached him.

7. After listening to Plaintiff, Defendant McCauley advised him that Walmart wanted to "trespass" him. Plaintiff said that was fine, and told Defendant McCauley that if she

were to ask him to leave the store, that he would do so, but that no employee up to that point had asked him to leave.

8. During the course of this exchange, Defendant McCauley, asked Plaintiff for his ID. Plaintiff responded to the request by advising Defendant McCauley that he was not required to provide ID under these circumstances, and that he would not do so.

9. At this point, Defendant McCauley told Plaintiff that his refusal to provide ID to her constituted obstruction, and that it was a "jail-able" offense. Plaintiff told Defendant McCauley to do what she thought she had to do. Defendant McCauley then proceeded to handcuff Plaintiff and place him under arrest for obstruction.

10. As they were leaving the store, Plaintiff correctly stated to Defendant McCauley, that she was violating his rights inasmuch as West Virginia is not a "stop and ID" State, to which Defendant McCauley responded incorrectly that it was a "stop and ID" State.

11. Plaintiff was then taken to the Buckhannon Police Department and processed. In order to be released, Plaintiff was required to post a $1,500.00 cash or surety bond, plus pay a $12.00 LET Fee.

12. After further reviewing the complaint and the statute, Plaintiff's obstruction charge was subsequently dismissed upon the motion of the Upshur County Prosecuting Attorney on June 22, 2021.

## COUNT ONE - VIOLATION OF THE FOURTH AMENDMENT
### (False Arrest)

13.	The previous paragraphs are hereby incorporated by reference as though fully restated herein.

14.	On January 10, 2021, Defendant McCauley, effected the warrantless arrest of the Plaintiff for an alleged violation of W. Va. Code § 61-5-17 - obstructing an officer.

15.	Defendant McCauley seized the Plaintiff and arrested him without a warrant and without probable cause that he had committed any criminal offense.

16.	At the time of the Plaintiff's arrest, the facts and circumstances within Defendant McCauley's knowledge, were not sufficient to warrant a reasonably prudent person to believe in the circumstances shown that Plaintiff had violated any criminal statute or offense. Therefore there was no probable cause at the time of his arrest to justify the seizure.[1]

17.	At no time did Plaintiff commit any act constituting a violation of any statute or offense.

18.	Plaintiff was charged with obstructing an officer, which provides:

> Any person who threats threats, menaces, acts or otherwise, forcibly or illegally hinders or obstructs, or attempts to hinder or obstruct, any law-enforcement officer, probation officer or parole officer acting in his or her official capacity is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than fifty nor more than five hundred dollars, and may, in the discretion of the court, be confined in the county or regional jail not more than one year.

---

[1] Although in criminal cases the question of whether a police officer had probable cause to make an arrest is a question for the court to decide, there is substantial authority that in § 1983 cases this issue should be submitted to the jury upon proper instructions defining probable cause. Thacker v. City of Columbus, 328 F.3d 244 (6th Cir. 2003); Montgomery v. De Simone, 159 F.3d 120 (3d Cir. 1998); McKenzie v. Lamb, 738 F.2d 1005 (9th Cir. 1984); Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996).

19. The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure is unreasonable under the Fourth Amendment if it is not based on probable cause. Dunaway v. New York, 442 U.S. 200, 213, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Thus, "[i]f a person is arrested when no reasonable officer could believe ... that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues." Rogers v. Pendleton, 249 F.3d 279, 290 (4th Cir. 2001) (citation omitted).

20. "Probable cause is determined by a 'totality-of-the-circumstances' approach." Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017) (citing Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ). The inquiry "turns on two factors: 'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.' " Id. (quoting Graham v. Gagnon, 831 F.3d 176, 184 (4th Cir. 2016) ). While the court looks to the information available to the officer on the scene at the time, the courts apply an objective test to determine whether a reasonably prudent officer with that information would have thought that probable cause existed for the arrest. Graham, 831 F.3d at 185. Evidence sufficient to secure a conviction is not required, but probable cause exists only if there is sufficient evidence on which a reasonable officer at the time could have believed that probable cause existed for the arrest. Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

21. On the charge of allegedly obstructing an officer, in violation of WV Code § 61-5-17(a), the plain language of the statute establishes that a person is guilty of obstruction when he, "by threats, menaces, acts or otherwise forcibly or illegally hinders or obstructs or

attempts to hinder or obstruct a law-enforcement officer, probation officer or parole officer acting in his or her official capacity." The Fourth Circuit recently examined the statute:

> As West Virginia's high court has "succinct[ly]" explained, to secure a conviction under section 61-5-17(a), the State must show "forcible or illegal conduct that interferes with a police officer's discharge of official duties." State v. Davis, 229 W.Va. 695, 735 S.E.2d 570, 573 (2012) (*quoting* State v. Carney, 222 W.Va. 152, 663 S.E.2d 606, 611 (2008)). Because conduct can obstruct an officer if it is either forcible or illegal, a person may be guilty of obstruction "whether or not force be actually present." Johnson , 59 S.E.2d at 487. However, where "force is not involved to effect an obstruction," the resulting obstruction itself is insufficient to establish the illegality required by section 61-5-17. Carney , 663 S.E.2d at 611. That is, when force is not used, obstruction lies only where an illegal act is performed. This is because "lawful conduct is not sufficient to establish the statutory offense." Id.
>
> Of particular relevance to our inquiry here, West Virginia courts have held that "when done in an orderly manner, merely questioning or remonstrating with an officer while he or she is performing his or her duty, does not ordinarily constitute the offense of obstructing an officer." State v. Srnsky, 213 W.Va. 412, 582 S.E.2d 859, 867 (2003) (*quoting* State ex rel. Wilmoth v. Gustke, 179 W.Va. 771, 373 S.E.2d 484, 486 (W. Va. 1988)).
>
> For example, the Supreme Court of Appeals has found that no obstruction is committed when a property owner asks a law enforcement officer, "without the use of fighting or insulting words or other opprobrious language and without forcible or other illegal hindrance," to leave her property. Wilmoth , 373 S.E.2d at 487. This principle is based on the First Amendment "right to question or challenge the authority of a police officer, provided that fighting words or other opprobrious language is not used." Id. ; *see* Graham , 831 F.3d at 188 ("Peaceful verbal criticism of an officer who is making an arrest cannot be targeted under a general obstruction of justice statute ... without running afoul of the First Amendment." (citation omitted)).

Hupp v. State Trooper Seth Cook, 931 F.3d 307 (4th Cir. 2019).

22.     The body camera footage of the incident shows that Plaintiff was polite and cooperative when interacting with Defendant McCauley. He merely questioned her constitutional authority to demand his ID, and stated that he was willing to be placed under arrest, if she chose to arrest him. Such conduct does not amount to "forcible or illegal conduct that interferes with a

police officer's discharge of official duties." State v. Davis, 229 W.Va. 695, 735 S.E.2d 570, 573 (2012) (*quoting* State v. Carney, 222 W.Va. 152, 663 S.E.2d 606, 611 (2008)).

23.     West Virginia law provides that police officers may not arrest individuals suspected of misdemeanor criminal violations without a warrant, unless the offense is performed in the officer's presence. *See* W. Va. Code § 15-5-18. No criminal violations were alleged to have been committed by the Plaintiff in the presence of Defendant McCauley. Therefore, even had probable cause existed, State law requires that Defendant McCauley, was mandated to obtain an arrest warrant prior to placing the Plaintiff under arrest for misdemeanor criminal violations occurring outside their presence.

24.     No reasonable officer would have believed that probable cause existed for the Plaintiff's warrantless arrest on January 10, 2021. Plaintiff was merely questioning Defendant McCauley's authority to effect a seizure of him, which he possessed a constitutional right to do, and which has been explicitly stated by both the Fourth Circuit and the West Virginia Supreme Court of Appeals, as being lawful. At no time did Plaintiff obstruct or hinder any police officer - forcibly or otherwise.

25.     Nor was there reasonable suspicion to detain and forcibly ID the Plaintiff under the circumstances. The alleged crime being investigated by the defendant was an alleged complaint of trespass by Walmart. However, at no time was Plaintiff ever requested to leave Walmart, nor given the opportunity to leave Walmart.

26.     The misdemeanor offense of trespass as found in West Virginia Code. W. Va. Code § 61-3B-2 provides that for conviction of trespass in a structure or conveyance, the potential sentence is only a fine of not more than $100.00. There is no possibility of incarceration

under the statute. As the West Virginia Supreme Court observed in <u>State ex rel. Forbes v. McGraw</u>, 183 W.Va. 144, 394 S.E.2d 743 (W. Va. 1990), pretrial incarceration of a defendant for an alleged standalone violation of § 61-3B-2 would be improper because incarceration is not a potential penalty of the offense. § 61-3B-2 also expressly requires that the suspect refuse to leave the premises. Defendant never asked, or gave Plaintiff the opportunity, to leave the premises prior to placing him under arrest.

27.     As a direct and proximate result of Defendant's actions, Plaintiff suffered harm, including attorney fees and expenses, for which he is entitled to recover.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment against the Defendant as prayed for, including:

A.     That damages be awarded against the Defendant in all counts outlined herein for violation of the Plaintiffs' civil rights, as well as an award against the Defendant for the costs of this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

B.     Such other and further relief as this Court shall deem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

                    JOHNNY ALAN SCOTT, JR.
                    By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

for the Plaintiff